Mark L. Smith (#11367)
  msmith@sffirm.com
Jacob L. Fonnesbeck (#14176)
  jfonnesbeck@sffirm.com
**SF FIRM, LLP**
420 E. South Temple, Suite 307
Salt Lake City, UT 84111
Telephone:  (801) 584-1800
Facsimile:   (801) 584-1820

*Attorneys for WebGroup Czech Republic, a.s.
and NKL Associates s.r.o.*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C. and SLING TV L.L.C., | **DEFENDANTS' MOTION TO TRANSFER** |
| Plaintiffs, | |
| v. | Case No. 2:23-cv-00553-RJS-JCB |
| WEBGROUP CZECH REPUBLIC, A.S. and NKL ASSOCIATES, S.R.O., | Judge Robert J. Shelby |
| Defendants. | Magistrate Judge Jared C. Bennett |

Defendants WebGroup Czech Republic, a.s. and NKL Associates, s.r.o. (together, "Defendants") hereby move the Court to transfer this case to the District of Delaware.

////

////

////

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Aliphcom*,
    449 F. App'x 33 (Fed. Cir. 2011) ...........................................................................6, 7

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
    928 F.2d 1509 (10th Cir. 1991) ..............................................................................5, 7

*Community Television of Utah, LLC v. Aereo, Inc.*,
    997 F. Supp. 2d 1191 (D. Utah 2014) .........................................................................9

*Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua, S.A.B. De C.V.*,
    2021 WL 4133917 (D. Colo. Sept. 10, 2021) .............................................................9

*Eagle View Techs., Inc v. GAF Materials, LLC*,
    594 F. Supp. 3d 613 (D.N.J. 2022) .............................................................................6

*Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ..............................................................................5, 8

*MasterObjects, Inc. v. Meta Platforms, Inc.*,
    2022 WL 12039301 ....................................................................................................6

*Medical Components, Inc. v. C.R. Bard, Inc.*,
    2018 WL 1470572 (D. Utah Mar. 23, 2018) ..............................................................6

*Open Text S.A. v. Box, Inc.*,
    2013 WL 12216514 (E.D. Vir. Oct. 18, 2013) ...........................................................8

*Phil-Insul Corp. v. Airlite Plastics Co.*,
    854 F.3d 1344 (Fed. Cir. 2017) ..................................................................................6

*Pragmatus AV, LLC v. Yahoo! Inc.*,
    2013 WL 4629000 (D. Del. Aug. 28, 2013) ...............................................................5

*Stewart Org. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ......................................................................................................5

*In re Visaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) ..............................................................................6, 7

*In re Volkswagen of America, Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ..............................................................................5, 6

*WellPet, LLC v. Midwestern Pet Foods, Inc,*
    2009 WL 5111790 (M.D. Penn. Dec. 16, 2009)........................................................9

### RULES / STATUTES

28 U.S.C. § 1391(c)(3)....................................................................................................9

28 U.S.C. § 1404(a) ..............................................................................................5, 7, 9

Federal Rule of Civil Procedure 4(k)...........................................................................9

## **INTRODUCTION**

This lawsuit arises from a patent litigation spree that Plaintiffs have initiated against a number of websites and apps that can be accessed using a common streaming protocol, called "adaptive bitrate streaming." Plaintiffs thus far have brought five such lawsuits—including two against Utah corporations—in the District of Delaware. Yet, for two lawsuits involving websites hosting adult content, including the present case, Plaintiffs chose instead to file their suit in the District of Utah. This is despite the fact that each of these cases asserts the ***same*** patents against the ***same*** accused technology and brings the ***same*** claims using largely copy-and-pasted allegations across all Complaints. This is also despite the fact that neither Plaintiffs nor Defendants are incorporated in Utah or have their principal places of business in Utah.

This patent case should be transferred to the District of Delaware so that it can be decided efficiently and consistently with the Plaintiffs' other five, virtually identical patent cases already proceeding in the District of Delaware. Indeed, the Delaware cases already have been assigned to the same judge, who can streamline these overlapping proceedings, hold a common *Markman* hearing, decide common summary judgments issues, and hold bellwether trials, if the cases advance to that stage. By contrast, requiring this case to proceed in this District will waste judicial resources by requiring different judges to decide identical (or substantially identical) issues, with the attendant duplication of work and potential for inconsistent rulings, while creating inconvenience and inefficiency for the parties—including Plaintiffs, whose witnesses will need to testify multiple times about the same events without potential for coordination.

Plaintiffs' sole connection to this District involves the named patent inventors, who allegedly reside in Utah. But a transfer to Delaware will create no inconvenience to these inventors given Plaintiffs' overall litigation campaign: These witnesses will ***already*** have to travel to Delaware to testify at any trial. Transferring the case to Delaware may actually increase convenience by obviating the need for multiple trials (for example, if the cases are decided on common summary judgment issues) and would allow discovery to be efficiently managed to minimize inconvenience for them and all other witnesses. And Plaintiffs cannot seriously assert

that litigating in Delaware is otherwise inconvenient for them because they intentionally filed multiple cases in that District over the same patents, including against Utah corporations. Defendants respectfully request a transfer of this case to the District of Delaware.

### FACTUAL BACKGROUND

In 2023, Plaintiffs filed nine cases that include assertion of the same six patents:

1. *Dish Techs., LLC v. MG Premium Ltd.*, No. 2:23-cv-00552-HCN (D. Utah, filed Aug. 22, 2023);

2. *Dish Techs., LLC v. WebGroup Czech Republic, A.S.*, No. 2:23-cv-00553-RJS (D. Utah, filed Aug. 22, 2023);

3. *DISH Techs. LLC et al. v. IFIT Health & Fitness, Inc. f/k/a ICON Health & Fitness, Inc.*, No. 1:23-cv-00963-GBW (D. Del., filed Sept. 1, 2023);

4. *DISH Techs. LLC v. Beachbody, LLC d/b/a BODi*, No. 1:23-cv-00987-GBW (D. Del., filed Sept. 6, 2023);

5. *DISH Techs. LLC v. fuboTV Media* Inc., No. 1:23-cv-00986-GBW (D. Del., filed Sept. 6, 2023);

6. *Dish Techs. LLC et al. v. A Parent Media Co. Inc.*, No. 1:23-cv-01000-GBW (D. Del., filed Sept. 8, 2023);

7. *Dish Techs., LLC v. Vidgo, Inc.*, No. 23-cv-000624-CMR (D. Utah, filed Sept. 11, 2023);

8. *Dish Techs. LLC v. BritBox, LLC*, No. 1:23-cv-08971-PAC (S.D.N.Y., filed Oct. 12, 2023);

9. *DISH Techs. LLC v. Yanka Indus, Inc. d/b/a MasterClass*, No. 1:23-cv-01305-GBW (D. Del., filed Nov. 15, 2023).

The common patents include U.S. Patent Nos. 10,469,554 ("the '554 Patent"), 11,677,798 ("the '798 Patent"), 9,407,564 ("the '564 Patent"), 10,951,680 ("the '680 Patent"), 8,868,772 ("the '772 Patent"), 11,470,138 ("the '138 Patent"). Although some cases assert additional patents, all of the patents asserted in the present case are also asserted in the other cases pending in Delaware. *See id.*

Each Complaint uses nearly identical allegations, with only minor changes to reflect each defendant's business and particular circumstances regarding Plaintiffs' willfulness allegations. Confirming their substantial identity, some of the Complaints appear to contain copy-and-paste errors. For example, the complaint against Yanka Industries, Inc. appears to contain an error where the Word auto-referencing macro failed to execute properly when the text was copied from one Complaint to the other. *See DISH Techs. LLC v. Yanka Indus, Inc. d/b/a MasterClass*, 1:23-cv-01305-GBW, Dkt. No. 1 ¶ 39 (D. Del.):

> 39.    On information and belief, MasterClass possessed knowledge of, and was aware of, the '554 Patent well before the time of filing this lawsuit. *See, e.g.,* Paragraphs **Error! Reference source not found.**—35, *supra*.

The Complaints allege that the patents relate to "adaptive bitrate streaming ('ABR') technology." *See, e.g.*, Dkt. No. 1 ("Compl.") ¶ 41. According to Plaintiffs, ABR is a streaming protocol that divides data into a "plurality of streamlets" to adjust to different bandwidths. *Id.* ¶ 47. The client (user) "controls switching between different bitrates." *Id.* ¶ 48. As stated in the Complaint, these patents arose in the context of work at MOVE Networks, Inc., whose patent portfolio Plaintiffs acquired in 2012. *Id.* ¶ 50. Although Plaintiffs are Colorado companies, *id.* ¶¶ 2–3, the inventors behind the patents allegedly reside and worked in Utah. *Id.* ¶ 51.

Defendants in all of the pending Utah and Delaware cases are alleged to be "distributor[s] of content over the Internet." *Id.* ¶ 41. For example, Yanka operates the "Masterclass" website for online classes. Case No. 1:23-cv-01305, Dkt. No. 1 ¶ 4 & Exs. I, O (D. Del.). Beachbody provides on-demand online fitness classes, such as P90X. Case No. 23-cv-00987, Dkt. No. 1 ¶ 34 & Ex. I (D. Del.). And fuboTV provides sports and other channel broadcasting for customers without cable. Case No. 1:23-cv-00986, Dkt. No. 1 ¶ 4 & Ex. I (D. Del.). Two of the cases—one brought against Defendants here, and the other brought against MG Premium—are against adult content platforms. Case No. 2:23-cv-00552, Dkt. No. 1 ¶ 4 (D. Utah); Compl. ¶ 4. In each case, Plaintiffs allege they visited the various defendants' websites through a web browser, and issued

HTTP "get requests" to determine whether multiple bitrate files could purportedly be retrieved. *See, e.g.*, Compl. Exs. I, H.

Plaintiffs filed the majority of their patent cases—those against defendants Yanka Industries, A Parent Media, Beachbody, fuboTV, and IFIT Health & Fitness—in the District of Delaware, and each of these cases have each been assigned to Judge Gregory Williams. Yet, Plaintiff filed two of their patent cases—the ones against MG Premium and Defendants—in this District. *See Dish Techs., LLC v. MG Premium Ltd.*, No. 2:23-cv-00552-HCN (D. Utah); *see also* Compl. The MG Premium case has been assigned to Judge Nielson. *See Dish Techs., LLC v. MG Premium Ltd.*, No. 2:23-cv-00552-HCN, Dkt. No. 48 (D. Utah).[1]

On February 2, 2024, Magistrate Judge Bennett granted Defendants' request that this motion for transfer be heard and decided first by the Court while the deadline for Defendants to answer or otherwise respond to the Complaint be extended until 30 days after a ruling on the motion to transfer, or until 30 days after the transfer, whichever is later. Dkt. No. 12.

## **ARGUMENT**

Defendants request that this case be transferred to the District of Delaware under 28 U.S.C. § 1404(a). Pursuant to that statute, a district court may transfer an action "for the convenience of parties and witnesses, and in the interest of justice" to "any other district or division where it might have been brought." *Empl. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (brackets omitted). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Here, the interest of justice and considerations of convenience strongly favor transfer.

---

[1] On January 24, 2024, MG Premium filed a motion to dismiss or to transfer its case to the District of Delaware. *Id*. Dkt. No. 58. That motion remains pending. The deadline to respond to the complaint has been stayed. *Id.* Dkt. No. 56.

A.    The Interest of Justice Strongly Favors Transfer

"[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Id.* (citation and brackets omitted). Thus, "[i]t is permissible for a court to consider the co-pendency of cases involving the same patent in ruling on a motion to transfer venue" as well as "the efficiency gains that could be achieved by a single court handling the suit-at-issue and a co-pending suit … involving the same patent and underlying technology." *Pragmatus AV, LLC v. Yahoo! Inc.*, 2013 WL 4629000, at *5 (D. Del. Aug. 28, 2013) (citations and brackets omitted).

Here, Plaintiffs filed nearly identical lawsuits against five other defendants over the same patents and technology in the District of Delaware. Each of these cases is assigned to the same District Judge in Delaware, who has a "superior opportunity to familiarize himself . . . with the nature of the case and the probable testimony at trial, and ultimately is better able to dispose of these [cases]." *In re Visaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *see also In re Aliphcom*, 449 F. App'x 33, 35 (Fed. Cir. 2011) (affirming transfer because having the same "judge handle this and the co-pending case involving the same patent would be more efficient than requiring another magistrate or trial judge to start from scratch"); *Eagle View Techs., Inc v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 625 (D.N.J. 2022) (granting transfer because otherwise, "two different federal courts would 'be simultaneously considering discovery issues, reviewing *Markman* briefing on [mostly] the same patents, and holding multiple trials on [mostly] the same patents'" (citation omitted)).

Transferring this case to the District of Delaware would thus "avoid wasting judicial resources and the risk of inconsistent rulings on the same patents." *Volkswagen*, 566 F.3d at 1351; *see also Medical Components, Inc. v. C.R. Bard, Inc.*, 2018 WL 1470572, at *2 (D. Utah Mar. 23, 2018) (granting transfer that would prevent "substantial duplication of labor" and

"unnecessary court costs or delay," reduce the "risk of inconsistent verdicts or outcomes," and promote "judicial and litigant economy"). Indeed, the Court may waste its energies deciding issues if the Delaware case rulings becomes preclusive against Plaintiffs through offensive non-mutual collateral estoppel. *See Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1357–58 (Fed. Cir. 2017) (affirming preclusive weight for claim construction and non-infringement rulings in prior case); *MasterObjects, Inc. v. Meta Platforms, Inc.*, 2022 WL 12039301, at *3–4 (N.D. Cal. Oct. 20, 2022 (giving preclusive effect to parallel case claim constructions).

Accordingly, the "interest of justice" and considerations of judicial economy, avoiding inconsistent rulings, and conserving resources strongly favor transfer.

### B.    Convenience Factors Support Transfer

Given the above circumstances, the Court may properly transfer the case on efficiency grounds even if it involves some purported inconvenience to the parties. *See Vistaprint*, 628 F.3d at 1347 (finding no error in a transfer decision based on efficiency "even if the convenience factors call for a different result"); *Aliphcom*, 449 F. App'x at 34–35 (affirming transfer where "convenience elements were out-weighed by the concerns of judicial efficiency and inconsistent judgments'). Thus, regardless of how the convenience factors are weighed here, transfer to the District of Delaware remains warranted.

That said, in this case, convenience for the parties and witnesses also favors transfer. Courts may consider several non-exclusive factors to evaluate transfer, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler*, 928 F.2d at 1516 (citation omitted).[2]

Plaintiffs allege that three potential witnesses—the inventors named on the patents, two of whom are party witnesses as Plaintiffs' employees—reside in Utah. Compl. ¶ 51. Although it would perhaps typically be less convenient for these witness to testify in Delaware, Plaintiffs have already eliminated any such potential convenience by choosing to file the majority of their other cases asserting these same patents in the District of Delaware. Thus, the inventors will already have to be deposed and potentially testify at trial in the Delaware cases. Transferring the case to Delaware may well ultimately reduce potential inconvenience for these three witnesses by allowing discovery to be consolidated and the cases to be efficiently resolved, potentially eliminating the need for multiple depositions and/or multiple trials.[3]

The remaining witnesses undoubtedly will face less inconvenience if this case is transferred. As courts have frequently observed, the most important witnesses in a patent case tend to be "those involved in the development, production, marketing, and sales of the accused product." *See, e.g.*, *Open Text S.A. v. Box, Inc.*, 2013 WL 12216514, at *2 (E.D. Vir. Oct. 18, 2013). Here, Defendants lack any ties to Utah, and the witnesses responsible for technical operation of the accused websites reside abroad in the European Union. Seifert Decl. ¶¶ 4–5. They would be less inconvenienced by traveling to Delaware. *Id.* ¶ 7. Moreover, the third-party that operates Defendants' servers is also located abroad in the European Union. *Id.* ¶ 6.

The District of Delaware is also significantly less congested than the District of Utah. According to the Federal Court Management Statistics, the District of Delaware had an average time of 33.7 months from filing to trial (and 8 months on average from filing to disposition) in

---

[2] Although judicial efficiency is not expressly listed as a factor, the "interest of justice" is expressly found in the statute and falls under "other considerations . . . that make a trial easy, expeditious and economical." 28 U.S.C. § 1404(a); *Chrysler*, 928 F.2d at 1516.

[3] Although Plaintiffs' choice of forum is ordinarily entitled to weight, it "receives less deference . . . if the plaintiff does not reside in the district." *Employers Mutual.*, 618 F.3d at 1168. Plaintiffs here are Colorado corporations whose only claimed connection to this District is through the inventors (who are not named parties). Compl. ¶¶ 2–3, 50–51.

civil cases in 2022, compared to 60.7 months (and 11.5 months) in the District of Utah.[4] The District of Delaware also had a smaller overall case load, with 1,651 filings in 2023 (413 per judge) compared to 2,259 filings in the District of Utah (452 per judge). The District of Delaware may thus efficiently resolve these disputes both because its relative docket load and because of its familiarity with the patents and technology at issue.

The remaining enumerated factors are neutral. Judgment would be equally enforceable in either district, and a fair trial may be had in both locations. *See Community Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1207 (D. Utah 2014) (finding these factors neutral). And conflicts of law and local considerations are not likely to arise because the case involves the federal Patent Act, rather than state or local law. *See id.* (finding these factors to be "irrelevant" for claims under the federal Copyright Act).

C.    **The Case Could Have Been Brought in Delaware**

Finally, this case could have been brought in the District of Delaware on the same basis as this case—and as were the other cases filed by Plaintiffs including the same asserted patents. Plaintiffs do not rely on any Utah-specific contacts to establish personal jurisdiction or venue for Defendants. Instead, the Complaint cites Defendants' nationwide contacts with the United States to allege personal jurisdiction under Federal Rule of Civil Procedure 4(k). Compl. ¶ 21; *see Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua, S.A.B. De C.V.*, 2021 WL 4133917, at *12 (D. Colo. Sept. 10, 2021) (explaining that Rule 4(k)(2) "permits a federal district court to exercise personal jurisdiction on the basis of a defendant's nationwide contacts with the United States, provided 'the defendant is not subject to jurisdiction in any state's courts of general jurisdiction'"). Similarly, the Complaint relies on Defendants' incorporation outside the United States as a whole to allege proper venue. Compl. ¶ 25; *see* 28 U.S.C. § 1391(c)(3) (venue for foreign defendants is proper in any district).

---

[4] *See* Federal Court Management Statistics – Profiles (December 31, 2023), *available at* https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023.

Thus, Plaintiffs' arguments for personal jurisdiction and venue for the Defendants are identical in the District of Delaware as they are in this District because they are both based on nationwide contacts. Accordingly, this case could "have been brought" in the District of Delaware to the same extent as in this District, and the case may be properly transferred. 28 U.S.C. § 1404(a); *see WellPet, LLC v. Midwestern Pet Foods, Inc*, 2009 WL 5111790, at *2 (M.D. Penn. Dec. 16, 2009) (finding that the case "could have been brought in many of the United States' district courts" based on nationwide sales of the accused products).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this case be transferred to the District of Delaware.

DATED: February 13, 2024            **SF FIRM, LLP**

_____
      /s/ Mark L. Smith
Mark L. Smith
*Attorneys for Defendants WebGroup Czech*
*Republic, a.s. and NKL Associates, s.r.o.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2024, the foregoing **DEFENDANTS' MOTION TO**

**TRANSFER** was served on the person(s) named below via the Court's electronic filing system:

> Brent O. Hatch
> Adam M. Pace
> HATCH LAW GROUP
> 22 E. 100 S., Suite 400
> Salt Lake City, UT 84111
> hatch@hatchpc.com
> pace@hatchpc.com

_____/s/ Melina Hernandez_____
