IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DISH TECHNOLOGIES L.L.C.; and SLING TV L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> WEBGROUP CZECH REPUBLIC, A.S. and NKL ASSOCIATES, S.R.O., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:23-cv-00553-RJS-JCB <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Jared C. Bennett |

Now before the court is Defendants WebGroup Czech Republic, A.S. and NKL Associates, S.R.O.'s Motion to Dismiss[1] and Motion to Stay.[2] On August 22, 2024, Defendants filed their Motion to Dismiss arguing Plaintiffs' Complaint fails to establish personal jurisdiction or state a claim upon which relief may be granted. Defendants subsequently filed the Motion to Stay. For the reasons stated below, the court DENIES Defendants' Motion to Dismiss and GRANTS Defendants' Motion to Stay.

### FACTUAL BACKGROUND[3]

Plaintiffs are limited liability companies organized under Colorado law, with their principal places of business in Englewood, Colorado.[4] DISH Technologies "provides innovation

---

[1] Dkt. 30, *Defendants' Rule 12(B) Motion to Dismiss* (*Motion to Dismiss*).

[2] Dkt. 50, *Defendants' Motion to Stay Pending Conclusion of Inter Parties Review of All Asserted Patents* (*Motion to Stay*).

[3] The following facts are set forth as alleged in the Complaint and the parties briefing, including the attached exhibits, with any factual disputes resolved in Plaintiffs' favor. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ("Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor. Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction.") (citations and alteration omitted).

[4] *See* Dkt. 1, *Complaint* ¶¶ 2–3.

1

and technology services and products" to Sling TV.[5] Relevant to this case, DISH provides Sling TV an exclusive license to six DISH-owned patents: (1) United States Patent No. 10,469,554 ('554); (2) United States Patent No. 11,677,798 ('798); (3) United States Patent No. 9,407,564 ('564); (4) United States Patent No. 10,951,680 ('680); (5) United States Patent No. 8,868,772 ('772); and (6) United States Patent No. 11,470,138 ('138).[6] These patents "are directed to various novel aspects and improvements to adaptive bitrate steaming (ABR) technology."[7] ABR technology improves the quality of internet video streaming by "enabl[ing] content delivery to adapt to the bandwidth available at any particular time."[8]

More specifically, Patent '554 grants a right to "[a]n end user station to stream a live event video over a network from a server for playback of the video."[9] The patent lists technical components, including "a digital processing apparatus memory device comprising non-transitory machine-readable instructions," and capacity to perform a series of technical steps, e.g., the ability to access "a plurality of groups of streamlets," "select a specific" stream "based upon a determination by the end user station," "place a streamlet request to [a] server," "receive" a streamlet, and "provide" a streamlet.[10] Patent '798 protects "[a] system for adaptive-rate content streaming of digital content playable on one or more end user stations."[11] Patent '798 also refers

---

[5] *Id.*

[6] *Id.* ¶¶ 34–40.

[7] *Id.* ¶ 41.

[8] *Id.* ¶ 45.  *See also id.* ¶¶ 42–44, 46–49.

[9] *Id.* ¶ 60.

[10] *Id.*

[11] *Id.* ¶ 87.

to an "end user station" with specific components, including a "storage device storing digital content" stored in a "temporal" manner, capable of performing certain encoding processes.[12] Patents '564, '680, '772, and '138 all reference "a method" for "streaming" and describe technical processes that include specific terms.[13]  For example, one or more of the patents reference a "media player," "playback device," "user," "rate-adaptive stream," "storage device," "successive determination," "generating … factor," "virtual timeline," "streamlet request," "manner of timing," and "Transmission Control Protocol (TCP) connections."[14]  Plaintiffs have five other pending cases involving the same patents that are currently stayed.[15]

Defendants are corporations organized under Czech Republic law with their principal places of business in Prague, Czech Republic.[16]  Defendants operate pornography streaming services, including the interactive websites https://www.xvideos.com and https://www.xnxx.com.[17]  Defendants do not "aim" these services at any one country, and the services are "available to the entire world of internet users, setting aside age [and] country censorship filters."[18]  "Defendants directly and indirectly control the quality of the playback offered" by the streaming services.[19]

---

[12] *Id.*

[13] *Id.* ¶¶ 113, 140, 167, 196.

[14] *Id.*

[15] *See DISH Tech. LLC v. Aylo Freesites Ltd.*, No. 2:24-cv-00066-DAK-JCB, 2024 WL 3967098 (D. Utah Aug. 28, 2024); *DISH Techs. LLC v. Britbox, LLC*, No. 1:23-cv-08971-LGS (S.D.N.Y. Dec. 17, 2024); *DISH Tech. LLC v. FuboTV Media, Inc.*, No. 1:23-cv-00986-GBW (D. Del. Aug. 13, 2024); *DISH Tech. LLC v. MG Premium Ltd.*, No. 2:23-cv-552-HCN-DAO, 2024 WL 2701609 (D. Utah May 24, 2024); *DISH Tech. LLC v. Vidgo Inc.*, No. 2:23-cv-00624-HCN-CMR (D. Utay May 31, 2024); *DISH Tech. LLC v. Yanka Indus. Inc.*, No. 1:23-cv-01305-GBW (D. Del. Jan. 24, 2025).

[16] *Id.* ¶¶ 5–6.

[17] *Id.* ¶¶ 5–7.

[18] Dkt. 31, *Declaration of Robert Seifert in Support of Defendants' Rule 12(B) Motion to Dismiss* (*Seifert Declaration*) ¶¶ 8, 17; *see also* Complaint ¶ 14.

[19] *Complaint* ¶ 57.

Defendants do not have any "operations, employees, or facilities in the United States."[20] However, XVideos and XNXX are the top two adult-content websites in the United States.[21] And Defendants are not without connections to the United States. First, United States-based users comprise a significant percentage of Defendants' total traffic—approximately 11.96% percent for XVideos and 9.61% percent for XNXX.[22] Second, "Defendants contract with various Content Distribution Networks (CDNs) to distribute their video content" throughout the world.[23] CDNs operate networks of data servers that reduce "latency and loading times" by caching content from distant web servers on servers close to web users.[24] Third, at least before May 2024, Defendants contracted with United States-based CDNs to cache some of their content at data centers located in the United States and streamed at least some of their content from United States-based domains.[25] Fourth, Defendants have "an active services agreement with [the] United States company" ServerStack, Inc.[26] ServerStack maintains and operates the servers that directly support Defendants' streaming services, though the servers themselves are located in the Netherlands.[27] Relatedly, "[r]equests to remove content from at least the XVideo[s] and XNXX websites are sent to abuse@serverstack.com . . . ."[28] Fifth, Defendants use location data to target United States-based users with relevant digital advertising and United States-made

---

[20] *Motion* at 9; *Seifert Declaration* ¶¶ 3–4, 12–13.

[21] *Complaint* ¶ 29.

[22] *Motion to Dismiss* at 3.

[23] *Complaint* ¶ 22.

[24] *Id.*

[25] *Id.* ¶¶ 22, 24; *Seifert Declaration* ¶¶ 9–18.

[26] *Complaint* ¶ 26.

[27] *Seifert Declaration* ¶¶ 9, 18.

[28] *Complaint* ¶ 27.

content featuring United States-based actors.[29] And sixth, Defendants' business operations rely on United States copyrights and trademarks.[30]

## PROCEDURAL HISTORY

Plaintiffs initiated suit against Defendants in this court on August 22, 2023.[31] Plaintiffs allege Defendants infringed their ABR-related patents by using Plaintiffs' ABR technology "to stream on [their] adult-oriented websites."[32] To establish personal jurisdiction, Plaintiffs cited Defendants' contracts with United States-based CDNs and Defendants' service agreement with Serverstack.[33] Plaintiffs also cited Defendants acts of "target[ing] United States residents," "tailor[ing] advertising to the United States," and "rely[ing] on copyrights and trademark rights within the United States."[34]

On January 31, 2024, counsel for Defendants entered an appearance and filed a motion for an extension of time to respond to the Complaint pending the court's resolution of a forthcoming motion to transfer.[35] The court granted the extension,[36] and Defendants filed a corresponding motion to transfer this case to the District of Delaware.[37] In their Motion to Transfer, Defendants argued the case could be "properly transferred" to the District of Delaware because it was a more convenient forum and venue was proper there.[38] Regarding the latter

---

[29] *Id.* ¶ 28–31.

[30] *Id.* ¶ 32.

[31] *See generally id.*

[32] *Id.* ¶ 1; *see also id.* ¶¶ 59–221.

[33] *Id.* ¶¶ 22–24, 26.

[34] *Id.* ¶¶ 28, 31–32.

[35] Dkt. 6 *Notice of Appearance of Counsel*; Dkt. 8, *Defendants' Motion to Extend Time to Respond to Complaint Pending Order on Motion to Transfer.*

[36] Dkt. 12.

[37] Dkt. 13, *Defendants' Motion to Transfer (Motion to Transfer)*.

[38] *Id.* at 4, 8.

issue, Defendants examined Plaintiffs' argument for the court's exercise of personal jurisdiction and cited Plaintiffs' discussion of its "nationwide contacts" as evidence that the case could have been brought in Delaware.[39]  The court agreed the case could have been brought in the District of Delaware, but concluded Defendants failed "to meet their burden to establish transfer [was] appropriate."[40]

Defendants filed their Motion to Dismiss on August 22, 2024.[41]  The Motion is fully briefed and ripe for review.[42]  On January 17, 2025, Defendants filed petitions with the United States Patent and Trademark Office ("Patent & Trademark Office") seeking reconsideration and cancelation of all patents at issue in this case under 35 U.S.C. §§ 102 and 103.[43]  The Patent & Trademark Office has initiated *inter partes* review ("IPR") of the patents.[44]  Because the validity of Plaintiffs' patents is now under review, Defendants filed their Motion to Stay.[45]  In response, Plaintiffs agree "a stay should issue, but only after the court has ruled on the merits of Defendants' Motion to Dismiss."[46]

---

[39] *Id.* at 9.

[40] *See* Dkt. 23, *Memorandum Decision and Order Denying Defendants' Motion to Transfer (Transfer Order)* at 4.

[41] *See generally Motion*.

[42] *See generally id*; Dkt. 36, *Plaintiffs' Opposition to Defendants' Rule 12(b) Motion to Dismiss* (*Opposition*); Dkt. 47, *Defendants' Reply in Support of Rule 12(B) Motion to Dismiss and Objection to Declaration of Dr. Kevin Negus* (*Reply*).

[43] *Motion to Stay* at 5; *see also* 35 U.S.C. § 102 (requiring novelty for patentability); 35 U.S.C. § 103 (requiring the claimed invention to be non-obvious as a condition of patentability).

[44] *Id*.

[45] *See generally*, *Motion to Stay*.

[46] Dkt. 53, *Plaintiffs' Response to Motion to Stay and Memorandum in Support* (*Response to Motion to Stay*), at 1.

## LEGAL STANDARDS

Defendants' Motion to Dismiss challenges both the basis for the court's exercise of personal jurisdiction and the sufficiency of Plaintiffs' Complaint.  Defendants also seek to stay proceedings until conclusion of the ongoing IPR.

"The plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant is proper,"[47] and a defendant may move to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  However, a defendant may waive its right to object to a court's exercise of personal jurisdiction if it does not raise the defense at "the earliest point in a lawsuit" or "the first available opportunity."[48]  Waiver can be explicit or implicit, through actions that "amount to a legal submission to the jurisdiction of the court."[49]

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[50]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[51]

---

[47] *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).

[48] *Travelers Cas. & Sur. Co. of Am. v. Unistar Fin. Serv. Corp.,* 35 F. App'x 787, 789 (10th Cir. 2002).

[49] *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982); *see also*, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 148 (2023) ("When a defendant chooses to engage in behavior that amounts to a legal submission to the jurisdiction of the court, the Due Process Clause poses no barrier to the court's exercise of personal jurisdiction.") (Jackson, J., concurring) (internal quotation marks, alteration, and citation omitted); *Thompson v. United States*, 312 F.2d 516, 519 (10th Cir. 1962) ("Waiver comes about most frequently by the party submitting through conduct or through pleading."); *Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie-Tynes Mfg. Co.*, 203 F.3d 835, 2000 WL 147392, at *2 (10th Cir. 2000) ("[Rule 12(h)(1)] sets only the outer limits of waiver; it does not preclude waiver by implication . . . . [The] defense may be lost by failure to assert it seasonably, for formal submission in a cause, or by submission through conduct.") (citation omitted).

[50] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[51] *Iqbal*, 556 U.S. at 678.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[52] Additionally, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[53]

District courts have discretion in deciding motions to stay.[54] A court may "exercise the power to stay to provide economy of time and effort for itself and [the parties] appearing before the court."[55] Additionally, "[w]hen applying for a stay, a party must demonstrate 'a clear case of hardship or inequity' if 'even a fair possibility' exists that the stay would damage another party."[56]

## ANALYSIS

Defendants' Motion to Dismiss raises two distinct issues. First, Defendants argue the court should dismiss Plaintiffs' Complaint in its entirety for lack of personal jurisdiction.[57] Second, Defendants argue "Plaintiffs' direct infringement claims must be dismissed for failure to state a claim upon which relief can be granted."[58] The court considers each issue in turn and then addresses Defendants' Motion to Stay.

---

[52] *Id.* at 679.

[53] *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[54] *Downing Wellhead Equip., LLC v. Intelligent Wellhead Systems, Inc.*, 2024 WL 625372, at * 5 (D. Colo. Feb. 14, 2024); *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009) (reviewing a district court's decision on a motion to stay for an abuse of discretion).

[55] *Seed Research Equip. Solutions, LLC v. Gary W. Clem, Inc.*, 2012 WL 235971, at *2 (D. Kan. Jun. 20, 2012) (unpublished) (internal quotation marks omitted).

[56] *Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (quoting *Span-Eng Assocs. V. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985)).

[57] *Motion to Dismiss* at 1–2.

[58] *Id.* at 2.

I. **Motion to Dismiss**

a. **Personal Jurisdiction**

Plaintiffs argue personal jurisdiction is proper under Rule 4(k) of the Federal Rules of Civil Procedure.[59] Rule 4(k)(2) provides serving a summons establishes personal jurisdiction over a defendant for a claim that arises under federal law if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws."[60] Defendants do not dispute they are "not subject to jurisdiction in any state's courts of general jurisdiction," but argue the court's exercise of personal jurisdiction over them violates due process.[61] Specifically, Defendants argue they are Czech corporations with such minimal connections to the United States that the court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice.[62] Plaintiffs maintain personal jurisdiction is proper based on Defendants' use of CDNs located in the United States, Defendants' contract with Serverstack, and Defendants' "activities directed at the U.S."[63] Plaintiffs also contend Defendants conceded personal jurisdiction in their Motion to Transfer by arguing venue is proper in the District of Delaware.[64]

---

[59] *Opposition* at 1. The Complaint does not reference Rule 4(k). Instead, Plaintiffs assert jurisdiction is proper because "Defendants are incorporated in the Czech Republic, not the United States, subjecting them to jurisdiction in any judicial district in which they have operated or are operating." *Complaint* ¶ 21. Plaintiffs then recite Defendants' general activity in the United States and contend these activities are directed to customers in Utah. *See id.* ¶¶ 21–33. Plaintiffs cite these same activities in their Opposition and state personal jurisdiction is proper pursuant to Rule 4(k)(2). *Opposition* at 1. In any case, "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012).

[60] Fed. R. Civ. P. 4(k)(2).

[61] *Id.*; *see also Motion*, *Reply*.

[62] *Motion to Dismiss* at 9–17.

[63] *Opposition* at 4–15.

[64] *Id.* Plaintiffs argue personal jurisdiction is a "threshold factor" for venue. *Id.*

The court concludes Defendants have waived their personal jurisdiction defense.[65] Unlike subject matter jurisdiction, personal jurisdiction is an individual right and "it can, like other such rights, be waived."[66] Rule 12(h)(1) of the Federal Rules of Civil Procedure provides a party expressly waives its personal jurisdiction defense if it fails to "include it in a responsive pleading."[67] A defendant may also implicitly submit to the jurisdiction of the court through its actions, "whether voluntary or not."[68] As the Tenth Circuit Court of Appeals has explained, if a party participates in a case and does not present the defense "at the first available opportunity," including a pre-answer motion, Rule 12 mandates a waiver of the personal jurisdiction defense.[69]

In this case, Defendants filed a pre-answer motion—their Motion to Transfer—and did not object to personal jurisdiction.[70] In doing so, Defendants did not present the defense "at the first available opportunity," and implicitly submitted themselves to the jurisdiction of the court.[71] Moreover, in their Motion to Transfer Defendants specifically argued venue was proper in

---

[65] Because the court concludes Defendants have waived their personal jurisdiction defense, the court does not address Defendants' due process argument.

[66] *Ins. Corp. of Ireland*, 456 U.S. at 703.

[67] Fed. R. Civ. P. 12(h)(1)(B)(ii).

[68] *Ins. Corp. of Ireland*, 456 U.S. at 704–05.

[69] *Travelers Cas. & Sur. Co. of Am.*, 35 F. App'x at 789; *see also F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992) ("Objections to personal jurisdiction and service of process must be asserted in the answer or in a pre-answer motion. If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses."); *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1314 (10th Cir. 1994) ("If a party files a pre-answer motion and fails to assert the defense[] of lack of personal jurisdiction . . . he waives [that] defense[].") (quoting *Oaklawn Apartments*, 959 F.2d at 175).

[70] *See generally Motion to Transfer*.

[71] *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 704–05 ("The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not."); *51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d at 1314 ("If a party files a pre-answer motion and fails to assert the defenses of lack of personal jurisdiction or insufficiency of service, he waives these defenses."); *Mallory*, 600 U.S. at 148 ("Regardless of whether a defendant relinquishes its personal-jurisdiction rights expressly or constructively, the basic teaching of *Insurance Corp. of Ireland* is the same: When a defendant chooses to engage in behavior that amounts to a legal submission to the jurisdiction of the court, the Due Process Clause poses no barrier to the court's exercise of personal jurisdiction.") (Jackson, J., concurring) (internal quotation marks, alteration, and citation omitted).

Delaware "to the same extent as in this District" based on Defendants' nationwide contacts.[72] Jurisdiction is inherent to venue; that is, venue is not proper absent personal jurisdiction.[73] "[A] defendant does not identify 'a more *appropriate* state' by suggesting an alternative forum with no basis for personal jurisdiction but for its consent."[74] Additionally, Defendants have now filed a Motion to Stay, an action that further "amount[s] to a legal submission to the jurisdiction of the court."[75] Accordingly, the court concludes its exercise of personal jurisdiction over Defendants is proper.

### b. Failure to State a Claim[76]

Defendants also argue the court should dismiss Plaintiffs' claims for direct infringement under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiffs have not and cannot plead sufficient factual allegations showing Plaintiffs are entitled to relief.[77] Specifically, Defendants argue, "each Asserted Claim requires one or more claim elements to be performed or provided by *another* party—a classic 'divided infringement' issue—precluding direct

---

[72] *Motion to Transfer* at 12.

[73] *See RMG Media, LLC v. Donovan Marine, Inc.*, No. 2:23-CV-00251-DBB-CMR, 2024 WL 170930, *2 (D. Utah Jan. 16, 2024) (stating a "transferee court must have subject matter jurisdiction and personal jurisdiction over the parties"); *see also Hoffman v. Blaski*, 363 U.S. 335, 342 (1960) (stating the change of venue statute "requires an alternative forum in which plaintiff might proceed") (internal quotation marks and citation omitted); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (stating "§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants"); Venue, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining venue as "[t]he territory … over which a trial court has jurisdiction").

[74] *Merial Ltd.*, 681 F.3d at 1294–95 (Fed. Cir. 2012) (emphasis in original) (quoting *Touchcom, Inc. v. Bereskin & Parr*, 575 F.3d 1403, 1414 (Fed. Cir. 2009) ("Naming a more appropriate state would amount to a consent to personal jurisdiction there.")).

[75] *Ins. Corp. of Ireland*, 456 U.S. at 704–05.

[76] The Federal Circuit governs patent law and has exclusive jurisdiction if "federal patent law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims.'" *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1009 (10th Cir. 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)).

[77] *Motion to Dismiss* at 18–25.

infringement by Defendant."[78]  Defendants also argue they cannot be liable for direct infringement because "several steps of the asserted method claims … are only performed outside the United States."[79]  In support of these arguments, Defendants provide a declaration of WebGroup's Director, Robert Seifert, and five exhibits, including copies of Agreements and orders for services with various CDN providers.[80]  In response, Plaintiffs argue Defendants "are essentially seeking an early summary judgment," and the Complaint "provides ample evidence of direct infringement, including 355 pages of claim charts . . . [containing] an element-by-element explanation of the infringement."[81]

The court agrees Defendants' Rule 12(b)(6) arguments would require the court to convert their Motion to a motion for summary judgment because the arguments rest on "matters outside the pleadings."[82]  The Federal Rules of Civil Procedure provide if "matters outside the pleadings are presented to and not excluded by the court" on a 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given reasonable opportunity to present all material made pertinent to the motion."[83]

Plaintiffs' Complaint includes allegations of Defendants' ties with at least one United States CDN provider but does not include the terms of Defendants' contracts or information

---

[78] *Id.* at 18.

[79] *Id.* at 18, 24.

[80] *Seifert Declaration*; Dkt. 33-1, DataCamp Limited Service & Pricing Agreement; Dkt. 33-2, Highwinds CDN Service Order; Dkt. 33-3, *Master Service Agreement between Level 3 Communications France SARL and WGCZ*; Dkt. 33-4, *Cloudflare Insertion Order Form*; Dkt. 33-5, *Master Services Agreement between Limelight Networks, Inc. and Copypaste Limited*.

[81] *Opposition* at 19–20.

[82] *Lowe v. Town of Fairland, Okl.*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("A motion to dismiss for failure to state a claim upon which relief can be granted must be converted into a motion for summary judgment whenever the district court considers matters outside the pleadings."); *Carter v. Daniels*, 91 Fed. Appx. 83, 85 (10th Cir. 2004) ("If the court considers matters outside of the complaint, it should treat the motion as a motion for summary judgment, and not as a motion to dismiss.").

[83] Fed. R. Civ. P. 12(d).

regarding CDN providers outside of the United States.[84]  In their Motion to Dismiss, Defendants submitted exhibits of service agreements and order forms along with an affidavit to refute Plaintiffs' allegations.[85]  To conclude, as Defendants urge, that Plaintiffs' claims present divided infringement issues necessarily entails consideration of the Seifert Declaration and interpretation of the accompanying CDN Agreements and orders Defendants submitted with their 12(b)(6) Motion to Dismiss.[86]  While a motion to dismiss may be converted to a motion for summary judgment, "courts have broad discretion in determining whether or not to accept materials beyond the pleadings."[87]  Here, the court concludes the materials submitted by Defendants raise factual issues Plaintiffs must be given a reasonable opportunity to respond to and "present all material made pertinent" by those issues."[88]

Additionally, the court concludes resolution of Plaintiffs' direct infringement claims via the present Motion is premature.  Direct infringement claims generally require courts to engage in claim construction "to determine the scope and meaning" of the asserted claims.[89]  This task innately requires the court to review specific patent language, and often requires the court to

---

[84] *See generally Complaint*.

[85] *See Seifert Declaration*; Dkt. 33-1, DataCamp Limited Service & Pricing Agreement; Dkt. 33-2, Highwinds CDN Service Order; Dkt. 33-3, *Master Service Agreement between Level 3 Communications France SARL and WGCZ*; Dkt. 33-4, *Cloudflare Insertion Order Form*; Dkt. 33-5, *Master Services Agreement between Limelight Networks, Inc. and Copypaste Limited*.

[86] Dkt. 33, *Seifert Decl.*; Dkt. 33-1, Serving & Pricing Agreement; Dkt. 33-2, CDN Service Order; Dkt. 33-3, Level 3 Master Service Agreement; Dkt. 33-4, Insertion Order From; Dkt. 33-5, Limelight Master Service Agreement.

[87] *Lowe*, 143 F.3d at 1381; *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) ("When presented with a Rule 12(b)(6) motion, the district court has broad discretion in determining whether to accept materials beyond the pleadings.").

[88] Fed. R. Civ. P. 12(b); *see also* Fed. R. Civ. P. 56.

[89] *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 993 (Fed. Cir. 2024) (quoting *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2002) ("Adjudicating a claim of infringement generally requires a two-step analysis: The court first determines the scope and meaning of the claims asserted, and then the properly construed claims are compared to the allegedly infringing device (for an apparatus claim) or allegedly infringing act (for a method claim).") (internal alteration omitted).

review extrinsic evidence.[90] Further, Local Rule of Patent Practice 4.1 provides "[i]f a party files a motion that raises claim construction issues before the claim construction proceedings . . . , the court may defer ruling on the motion until the entry of the claim construction ruling."[91]

Here, the court concludes Defendants' Motion raises claim construction issues and improperly invites the court to weigh potential evidence.[92] Defendants argue they cannot be liable for direct infringement of Patents '554 and '138 because these patents involve "end user stations" that contain a "digital processing apparatus memory device" to "stream video" and Defendants do not make or sell end user stations.[93] But Defendants' arguments are contingent on the specific meaning of these terms, and the meaning of those terms may require claim construction. Regarding the '798 Patent, Defendants likewise argue they cannot be liable for direct infringement because the Patent requires a "system for adaptive-rate streaming," at least one "storage device" that "stores" digital content, and Defendants' servers are in the Netherlands.[94] Beyond implicating the meaning of these specific terms, Defendants' argument would require the court to assess and weigh evidence about the location of Defendants' servers.

Defendants also argue they cannot be liable for direct infringement of Patents '564, '680, and '772 because Defendants are not "users of an end user device or server" and contracted

---

[90] *Id.* at 993–94, 998 (discussing claim construction based on intrinsic evidence alone and claim construction informed by extrinsic evidence and expert testimony); *see also* 6 Annotated Patent Digest § 39:35.50, Claim construction on pretrial motions to dismiss (explaining that because direct infringement claims "require[] analyzing the patent's intrinsic evidence, and may require discovery and analysis of extrinsic evidence, most courts consider it generally improper to rule on claim construction issues on a pre-trial motion to dismiss").

[91] LPR 4.1.

[92] *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018) (concluding the district court improperly resolved issues of claim construction on a Rule 12(b)(6) motion); *In Re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323 (Fed. Cir. 2012) (holding the district court inappropriately engaged in claim construction at the pleading stage).

[93] *Motion to Dismiss* at 19.

[94] *Id.* at 19–20.

CDNs—not Defendants themselves—stream Defendants' content in the United States.[95] In asserting these arguments, Defendants implicitly interpret the patent terms "end user content player device," "user," "streaming," "storing," and "media player configured to stream the video"[96] and problematically invite the court to interpret their CDN Agreements. These arguments are more appropriate for a summary judgment motion after discovery and the claim construction procedure. Accordingly, the court declines to engage Defendants' 12(b)(6) arguments at this stage of the litigation.

## II. Motion to Stay

Defendants have also filed a motion to stay the case pending the IPR. Defendants argue the IPR could result in "obviate[ing] the need (and basis) for this litigation."[97] In deciding a motion to stay litigation pending a ruling on a petition for *inter partes* review, courts consider the following factors: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."[98] The court concludes a stay is appropriate.

Here, Defendants have not filed an answer, the discovery process has not begun, and no trial dates have been set.[99] Additionally, because an IPR is pending, a stay may simplify the issues for trial. IPR proceedings may only be initiated if the Director of the Patent & Trademark Office "determines that the information presented in the petition … and any response … shows

---

[95] *Id.* at 20–25.

[96] *See Complaint* ¶¶ 113, 140, 167.

[97] *Motion to Stay* at 5.

[98] *Norred v. Medtronic, Inc.*, 2014 WL 554685, at *1 (D. Kan. Feb. 12, 2014).

[99] *See generally*, Docket.

that there is a reasonable likelihood that the petition would prevail with respect to at least 1 of the claims challenged in the petition."[100] The IPR process is meant to "improve patent quality and limit unnecessary and counterproductive litigation costs."[101] Indeed, "[e]arly versions of what became the reexamination statute, 35 U.S.C. §§ 301–307, expressly provided for a stay of court proceedings during reexamination,"[102] but the House of Representatives deemed the stay provision unnecessary because "such power already resides with the court."[103] Accordingly, the court determines continuing litigation while the patents are under review poses the risk for inconsistent rulings and needless expenditure of resources for the parties and the court.[104] In addition, Plaintiffs agreed a stay should issue after the court ruled on the merits of Defendants' Motion to Dismiss.[105]

Because this case is in the early stages of litigation, the IPR may resolve or simplify the case for trial, and Plaintiffs consent to a stay, the court concludes a stay is appropriate.

## CONCLUSION

For the reasons stated above, the court DENIES Defendants' Motion to Dismiss[106] and GRANTS Defendants' Motion to Stay.[107]

---

[100] 35 U.S.C. § 314(a).

[101] *People, Inc. v. Ojmar US, LLC*, No. 14-cv-04968-HSG, 2015 WL 3453780, at *1 (N.D. Cal. May 29, 2015).

[102] *Gould v. Control Laser Corporation*, 704 F.2d 1340, 1342 (Fed. Cir. 1983).

[103] *Id.* (quoting H.H.Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980), U.S. Code Cong. & Admin. News 1980, pp. 6460, 6463).

[104] *See Fresenius USA, Inc. v. Baxter Intern., Inc.*, 721 F.3d 1330, 1344 (holding the cancelation of patent claims is binding in concurrent infringement litigation); *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998) (holding the reexamination was likely to result in cancelation of the infringement claims that would "require a dismissal of the interfering patent suit").

[105] *Response to Motion to Stay* at 1.

[106] Dkt. 30.

[107] Dkt. 50.

DATED this 20th of February 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge